Case number 318-0119, people of the state of Illinois, Apley v. Yolandus Lynn McDuffie, appellant. Mr. Bernstein. Thank you, your honor. My name is Joshua Bernstein. I represent Yolandus McDuffie, the appellant in this case, and I intend this afternoon to focus on three of the issues that are raised in our briefs. But of course, if your honors have questions about the other issues, I'd be happy to answer them. The issues I will primarily focus on is the state's failure to prove Mr. McDuffie guilty beyond a reasonable doubt under an accountability theory. And the two trial errors that relate most to that, which are argument three of our brief, the trial courts allowing the state to introduce the Smith & Wesson handgun, which had nothing to do with this crime, and the trial court's error in giving instruction 3.14 to the jury. I'll start with the reasonable doubt argument. As you will know from our briefs, our position in this case is that there was no evidence whatsoever presented that Mr. McDuffie had any involvement in the planning of this offense prior. Actually, he had no involvement in the offense except for his mere presence there, let alone planning or aiding or abetting in any way as would be required under an accountability theory. The evidence at trial shows essentially that Mr. McDuffie met up with Aaron Henderson and Cameron Bolden shortly before they went to the victim Jackson's house, and that at best, Mr. McDuffie was there when someone, not him, pulled a gun and shot Mr. Jackson. If you look at what the state believes is evidence of accountability for this offense, really, it isn't that. There are texts certainly between Mr. McDuffie and Mr. Henderson, but none of those texts give any indication at all that there was any sort of plan for anything other than meeting up. Cameron Bolden testified that there was a cannabis purchase that was supposed to occur. Allison Shippers, the girlfriend of the victim, testified that the night before she was with Bolden and Henderson talking about a gun purchase. The gun that was found in Iowa by the police and linked to this crime was the property of Henderson's cousin, who testified that she believed it had been stolen by Henderson himself. Henderson was arrested in Iowa. The gun was found later, but nonetheless, the gun made it to Iowa. Henderson made it to Iowa, and he was arrested in possession of money that had Jackson's blood on it. Shippers testified that she saw him rifling through the victim's pockets after the shooting. This is all evidence that Henderson committed a crime here, but there's no evidence that was introduced by the state that Mr. McDuffie either aided or abetted or played any role in this offense beyond mere presence. I think if you look at the Perez case, which we cited in our briefs, that's 189 Illinois 2nd, 254. That's not exactly the same factual scenario, but what you have is the defendant being there when an offense is committed and fleeing and testifying at trial that it was a armed crime. He didn't know that there was a war between these two gangs, between the Latin disciples and the Latin kings, and he didn't know anyone was going to be shot. That's even more evidence that we have in this case because there's no evidence beyond the fact that Bolden testifies that Mr. McDuffie was there at the time of the shooting. And in fact, if you look at the state's case, Ramos, which is First District case 2020, Illinois appellate 170929, that's a case in which the defendant handed a gun to people who were using his van and minutes later there was a drive-by, but the court found that he did not have any intention to aid these people in committing that crime. So our position here is that there's no evidence whatsoever regarding Mr. McDuffie's planning, agreement, even knowledge of this offense. Actually, the other errors, the two trial errors that I'd like to discuss really play into this because I think what happened here, if you look at the judges allowing this unrelated Smith and Wesson in, and if you look at the judges giving instruction 3.14 to the jury, it gave them, it really allowed them to associate Mr. McDuffie with violence, that he's a person who carries a gun and therefore he was somehow involved in this offense other than his mere presence. And I just want to say that I'm accepting the state's evidence. I'm interpreting this in favor of the state, but it's not necessarily even proven in my mind that Mr. McDuffie was even there. No one identified this third person who ran away on the video alone after this shooting. Nonetheless, that's the theory. And even with that tape, that doesn't show that Mr. McDuffie had knowledge. As to this Smith and Wesson and allowing the Smith and Wesson in, this gun was in no way relevant to the offense here. We have the gun. We have a Glock 40 millimeter that was tested by the state. All four of the shell casings coming from this gun were matched to that gun. I'm sorry, the shell casings found at the scene were matched to that gun. Three of the bullets were determined to have been fired from that gun and one was not. It was, they couldn't, it was too damaged to definitively prove that it came from that gun. So what did the, you know, the state says, well, we introduced this gun for knowledge, that he had knowledge of the offense. On a separate matter, there's nothing about his carrying a gun that says he had knowledge about this offense. At best, he had knowledge when either Henderson or Bolden pulled out a gun and murdered this Mr. Jackson. But on the other hand, what did the state do with this gun? They put in testimony that the serial number was filed off of this gun. So now we have Mr. Bolden, and by the way, your honors have, I'm sure have seen the record. There's all sorts of testimony about this irrelevant Smith and Wesson, which by the way is silver colored. The Glock was black. So what is the jury hearing? This is a guy who carries a gun with a filed serial number. And I know what's going through all of your minds. It's what's go, goes through any reasonable person's mind that this guy's a bad guy because he's carrying a gun with a filed serial number. There's only one reason to have a gun like that. But they didn't use this for knowledge. They, they said in their closing argument that he was carrying that gun to aid the robbery. And this is how it plays back into the, the lack of proof beyond a reasonable doubt that he participated in this robbery. The implication in their argument is I, I, I'm guessing, you know, he's a bad guy. He carries a serial number filed gun and he was muscle, but there's no proof of that at all. Nonetheless, that idea was planted in the jury's head and to ask if the jury considered it. Yeah. They wanted to compare these two guns. They asked for the gun and the guns were sent back and they compared the guns. So the, you know, there's a, a layer of prejudice there from this error, right? You have a lack of proof beyond a reasonable doubt. You have a piece of evidence that is utterly irrelevant. There's nothing about this gun that can make it more or less probable that Mr. McDuffie participated by the way, there's no proof that he was actually even carrying this gun on the day of this shooting. So what then happens, and we admit this issue is not preserved. The jury instruction issue is not instruction 3.14 was given. And as you know, instruction 3.14 tells the jury that Mr. McDuffie was in jail on a separate offense. This instruction was a relic of the state's original intention to bring up the fact that Mr. McDuffie was on parole at the time he was arrested, which the judge didn't permit. Yeah. Defense trial counsel erred. He did not object to this instruction coming in. But what, what happens is the third layer of this, this prejudice, because now the jury has an instruction that Mr. McDuffie committed another crime, but what's the other crime he committed? The jury's left in a void to fill in the blank, which is that he was carrying a gun that with a filed serial number. So he must have been the muscle on this, this robbery that those three items work together in conjunction to really illustrate the kind of problem with this entire case that the state put on and that the judge let them put on. I do also want to say with respect to the jury instructions, the jury deliberated for two hours without having been given instruction 26.01, which is the, I don't know the roadmap for how you do this when you're a jury, it tells them how you do what you're supposed to do. And it is the door that opens up all of the rest of the instructions and explains to the jury what needs to happen while they're deliberating. And the fact that the jury was ultimately given this instruction after they sent out a note, a jury note, that evidence, they had no clue what they were supposed to be doing. Yes, that was read to them. The judge read them that instruction when they came back out. That is true. But the judge did not tell them to start deliberating over again. And at that point, because of trial counsel's error, the jury still was left with the impression that Mr. McDuffie was in jail on some other charge. There was no other charge. There was no other crime. And the void could only be filled in with a gun that a bad guy carries. Mr. Bernstein, let me just ask you a question going back to the gun. There was a conversation between your client and his girlfriend that was recorded. And she mentioned that the police picked up something at your house with a search warrant. And was it the one used at the crime? And he said, no. Well, how would he know that if he wasn't there? Well, your honor, I think at best that that shows knowledge in the sense that he was there. But on the other hand, that doesn't that whatever gun they're talking about is not necessarily the Smith & Wesson. I apologize. It is definitely not the Glock. It's definitely not the murder weapon, which was found later on. And it is at best evidence of his knowledge that a crime had occurred. If he was there, we know from the videos that Bolden and Henderson kind of you see in the videos after the shooting. So Miss Shippers says that she saw Henderson rifling through Mr. Jackson's pockets. And then we see them moseying away on tape out for a stroll. The third person ran a couple of minutes before them, full tilt, running away. Now, what that tells me, number one, is if that was Mr. Jackson, that is a reasonable person's reaction to a shooting that occurs without their knowledge out of the blue. The reaction of the other two wandering away is the reaction of two people who have completed their plot to rob Mr. Jackson. Murder or no murder. So as far as the conversation between Miss Daggett and Mr. McDuffie, Justice Schmidt, I think that at best that shows his knowledge and that he was there. If I can just briefly say the gun was his knowledge though. If you look at how it was was not used for knowledge. Thank you, your honors. Thank you, Mr. Bernstein. Any other questions? No. Mr. Ossoff. May it please the court, counsel. My name is Mark Ossoff and I represent the people of the state of Illinois. In his first issue, defendant argues that people did not prove him guilty beyond a reasonable doubt of first degree felony murder of Derrick Jackson as people failed to show a common scheme or design or a shared criminal intent between defendant and Aaron Henderson, who's also known as Dewey. Generally, he's referred to such and I will describe Aaron Henderson as Dewey in my argument. People are going to stand on our first issue arguments made in the appellee brief, but we will discuss the defendant's key arguments, mainly in his reply brief. In his reply brief, defendant bases his arguments on the people's summary of the evidence and the people detail that the summary starts on page 20 of our brief and goes on for a couple of pages. But prior to that, the people detail the evidence with citations prior to the summary and defendant claimed that the lack of gunshot residue on his coat undermined evidence that he always carried guns. But defendant's black peacoat was collected three weeks after the crime and evidence showed that gunshot residue is removed by common activity. So that proved nothing. Defendant's girlfriend, Malika, said that he always carried a gun and he had a gun in his waistband on the day of the crime when he came home that afternoon. And Malika said that Dewey and Cameron Bolden returned with defendant that afternoon, but again, they always hung out together. Defendant claimed that no one identified him in the videos and it's true that no one saw his face in the videos, but Cam said the defendant was wearing the peacoat that was shown in the videos. In his brief, defendant claimed the jury did not believe Cam's testimony that Derek or the defendant shot Derek, but the jury found defendant guilty of count two, which stated that defendant quote shot Derek with a firearm, thereby causing his death. So the jury did believe Cam's testimony and that testimony was key because he said he saw defendant pull the gun out and though he didn't see the actual shooting, he heard the shots as he was running out of the house. So he was the first one out of the house. And in his brief reply brief, defendant tries to show all the individual pieces of evidence, failed to show a plan, and he evaluates the evidence in light most favorable to the defendant. But when you view the totality of the evidence in the light most favorable to the people, the people prove beyond a reasonable doubt the defendant and Dewey planned to rob Derek. Defendant immediately shot Derek upon entering the house and Dewey then robbed Derek of the 200 plus dollars that he knew, he knew that that Derek would be having a substantial amount of money to buy a gun that, you know, that His third issue, defendant asserts the trial judger by admitting the Smith & Wesson handgun and evidence as it was not the murder weapon and by providing it to the jury during deliberations. The fact that the S&W was not proven, it was proven not to be the murder weapon actually bolstered defendant's claim of innocence. The Smith & Wesson did not show defendant committed a murder but his jailhouse phone call with Malika about the Smith & Wesson supported that he knew about the murder itself. Okay, well let me ask you, even if I agree with that, what is the point of putting that handgun in at trial that's not the murder weapon and even sending it back to the jury? What is the possible relevance of the number one is not the murder weapon and to give them the jury to see that, you know, this is not the Glock and also to show that it is a weapon that they were talking about. It's a silver weapon also, which was described at some point in the testimony. So it's strictly for knowledge and one of the things that's key is that when the jury asked to see this weapon, they said if we can't have the gun, we at least want to know the length of the barrel. So what they were doing was comparing the length of this weapon to the Glock, which they knew was actually the murder weapon and it was quite clear from all the evidence that the Smith & Wesson was not the murder weapon. That was never an issue. It was always. So if it's not an issue, what's the point of that whole exercise? To show defendants' knowledge because of this jailhouse phone call with Malika, she's being really obtuse at first and not even saying it was. She said it was an item that had been found at Cliff Farmer's house and she didn't want to say what the item was. A offer of proof, she then said that they were speaking about a gun and then she affirmed also that she and defendant had been talking about the specific Smith & Wesson that had been found at Farmer's house. And so the people argue that based on this offer of proof, the judge did not err in admitting the Smith & Wesson, which in conjunction with the recorded phone call showed defendants' knowledge of the murder. He was asking, is it the one? And so that's the relevance of the Smith & Wesson. At one point, defendant argued that it was admitted to cause confusion. But as we said, we made clear it was not the murder weapon. It was just another piece of evidence to show that defendant was present. Well, if they weren't a little bit confused, why in the world would they care what the barrel length was on the Smith & Wesson? Well, they had the photograph of the impression in the snow. So if you compare the length of that Smith & Wesson, which they know is not the murder weapon, they say, well, look, the Glock is short. If it did, you say it fits that impression in the snow. There's no evidence that I recall where they specifically said that the Glock fit the impression in the snow. But the jury could look for themselves then and say, look, you know, clearly the impression in the snow is close to this Glock, not even close to this Smith & Wesson, which is definitely not the murder weapon. All right. And in his fourth issue, defendant claimed the trial judge heard by initially omitting I.P.I. 26.01 and then also in giving I.P.I. 3.14. And his briefs asserted the outcome of the trial would have been different had the jury been given 26.01 at the outset. But he admitted that the judge corrected this omission after the jury sent out a note. I mean, they obviously had some confusion. They were wondering, well, is there supposed to be, you know, the first charge and a charge 1A and then there's a second charge. So they had some confusion definitely because this jury instruction didn't make it back to them initially. The judge failed to announce that jury instruction or to give it. But when they did say we're confused, the judge gave it in detail and corrected any problem with the jury instructions by doing so. And then the jury was clearly instructed on how to consider these two charges. So the error that initially was there was cured. And there was no, as counsel noted, there was no objection by defendant at trial to either of these instructions. And there was no objection to saying, hey, judge, you failed to give this. So this issue is forfeited. And he did ask for plain error, but there was no error here on either one. 3.14 is a limiting instruction. And so it says that evidence has been received that defendant is involved in offense other than those in the information. And that offense would have been the one that he was in jail for when he was in jail. So we have a limiting instruction saying that, you know, it's he. Well, I mean, they also told the jury that the defendant possessed a firearm with a filed-off serial number too, right? Well, they said that the gun had a filed-off serial number, but they didn't say that that gun was in his possession. Well, they said they got it in a search warrant at his house, didn't they? They found that at Cliff Farmer's house. The Smith and Wesson? Yes, sir. Okay. All right. My bad. No problem. So we, our argument is that there was no error in the 2601 going in a little late. We provided case law that effect. And we also say that 3.14 actually benefited defendant rather than causing him any harm. So there was no error in giving that one also. And we're going to ask the court to affirm defendant's conviction and sentence. Have any other questions, your honors? None. Thank you. Thank you, your honor. I just have a brief rebuttal. One of the last points that Mr. McDuffie had the gun in his possession, I believe they didn't say he had the gun, the gun was in his possession. If you look at page 937 of the common law, I apologize, the report of proceedings in this case, that is the closing argument of the state at which the state's attorney said, now, how did the defendant here aid and abet the robbery? Well, the biggest thing is he brought the gun. As the jury did not find him guilty of discharge, the inference is that someone else was holding the Glock when the trigger was pulled. And it's a little disingenuous for counsel to say that he was found guilty of murder when they, when our point is they found him not guilty as to personal discharge of the gun. Someone else was holding the gun and pulled the trigger. So what gun was the jury supposed to think he was carrying? I guess it's the Smith & Wesson with a filed serial number because he's a gangbanger. You know, I don't understand that argument and it is belied by the record. As for the always carrying guns, that of course ties right back into what we're saying is an error. He always carried guns. So he must've been carrying a gun on that day, not the Glock, but a Smith & Wesson with filed serial number. I think your honor that the interplay between these errors requires you, if you're not going to find, if you're not going to reverse the conviction outright, this at least requires you to give Mr. McDuffie a new trial so that he can, you know, have a fair trial that's not infected by trial errors, counsel's errors, and this prejudicial evidence that was not at all relevant. Unless your honors have any further questions, I ask you to reverse his conviction outright or in the alternative, offer him a new trial. Let me ask you, you filed a motion in the court or one of you did? Yes, your honor. We abandoned, withdrew, waived the argument to be of our brief, which dealt with the prior consistent statement issue. I've withdrawn that. I'm not pursuing it. I'm not arguing it. Please consider it waived. Or withdrawn. Okay. All right. Whatever works. When you began your argument, I understood you were saying you simply weren't going to argue today, but that's not the case. I'm sorry. I didn't hear you, your honor. At any rate, you are withdrawing that argument. Yes, your honor. We are withdrawing argument to be of the brief. All right. Very good. Thank you, your honors. Thank you. Thank you both for your arguments today. The protestors met around their advisement and now we'll recess until tomorrow morning.